**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| DANFOSS LLC; DANFOSS POWER SOLUTIONS (US) COMPANY; DANFOSS POWER SOLUTIONS II S.A. DE C.V.; DANFOSS POWER SOLUTIONS II, LLC; DANFOSS POWER SOLUTIONS, INC.; and SEMIKRON DANFOSS, LLC,<br><br>*Plaintiffs*,<br><br>v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; and the UNITED STATES OF AMERICA,<br><br>*Defendants*. | Case No. 26-00678 |

**COMPLAINT**

**INTRODUCTION**

1. Since February of this year, President Trump has imposed a series of tariffs under the International Emergency Economic Powers Act ("IEEPA").

2. Among those tariffs are the "fentanyl" tariffs on imports of Canadian-, Chinese-, and Mexican-origin goods and the reciprocal tariffs that apply to imports originating from almost every country in the world.

3. The President asserts that these tariffs fall within his authority under IEEPA to "regulate . . . importation." *See* 50 U.S.C. § 1702(a)(1)(B).

4. But this Court and the U.S. Court of Appeals for the Federal Circuit held that IEEPA does not authorize the "fentanyl" and reciprocal tariffs. *V.O.S. Selections, Inc. v. United States*, 772

F. Supp. 3d 1350, 1383, *aff'd in part*, 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted*, No. 22-250, 2025 U.S. LEXIS 2782 (Sept. 9, 2025).

5. Danfoss LLC; Danfoss Power Solutions (US) Company; Danfoss Power Solutions II S.A. de C.V.; Danfoss Power Solutions II, LLC; Danfoss Power Solutions, Inc.; and Semikron Danfoss, LLC (collectively, the "Danfoss Importers") are U.S. importers of record that have paid—and continue to pay—these IEEPA tariffs.

6. The Danfoss Importers seek (a) a declaration that the "fentanyl" and reciprocal tariffs and the underlying executive orders are unlawful; (b) an order directing the Defendants to refund the "fentanyl" and reciprocal tariffs the Danfoss Importers have paid, with interest as provided by law; and (c) permanent injunctive relief barring the Defendants from assessing or collecting the "fentanyl" or reciprocal tariffs on the Danfoss Importers' future imports into the United States.

**PARTIES**

7. Danfoss LLC is a Delaware limited liability company headquartered in Baltimore, MD.

8. Danfoss Power Solutions (US) Company is a Delaware corporation headquartered in Ames, IA.

9. Danfoss Power Solutions II S.A. de C.V. is a foreign corporation with its principal place of business in Queretaro, Mexico.

10. Danfoss Power Solutions II, LLC is a Delaware limited liability company headquartered in Ames, IA.

11. Danfoss Power Solutions, Inc. is a Delaware corporation headquartered in Ames, IA.

12. Semikron Danfoss, LLC is a New York limited liability company headquartered in Utica, NY.

13. U.S. Customs and Border Protection ("CBP") is the agency responsible for collecting duties and tariffs on goods imported into the United States, including the "fentanyl" and reciprocal tariffs imposed under IEEPA.

14. Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

15. The United States of America received the "fentanyl" and reciprocal tariffs collected from the Danfoss Importers and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

## JURISDICTION

16. This Court has subject-matter jurisdiction under 28 U.S.C. § 1581(i).

17. The Danfoss Importers' action is timely filed under 28 U.S.C. § 2636(i).

18. This Court has the powers of a district court and may award all appropriate relief, including declaratory judgments, injunctive relief, reliquidation, and refund judgments. 28 U.S.C. §§ 1585, 2643(a)(1), (c)(1).

19. As importers of record who paid the "fentanyl" and reciprocal tariffs and face ongoing injury without judicial relief, the Danfoss Importers have standing. *See* 28 U.S.C. § 2631(i).

## FACTS

### The Executive Orders Imposing the Fentanyl and Reciprocal Tariffs

20. On February 1, 2025, President Trump issued Executive Orders 14193, 14194, and 14195 imposing tariffs on imports of Canadian-, Chinese-, and Mexican-origin goods ("Fentanyl Tariffs"). *See* Exec. Order No. 14193, 90 Fed. Reg. 9113 (Feb. 1, 2025); Exec. Order No. 14194, 90 Fed. Reg. 9117 (Feb. 1, 2025); Exec. Order No. 14195, 90 Fed. Reg. 9121 (Feb. 1, 2025).

21. The Fentanyl Tariffs were imposed under IEEPA.

22. Although the President has since amended Executive Orders 14193, 14194, and 14195, the Fentanyl Tariffs remain in effect.

23. The Fentanyl Tariffs on Chinese-origin goods are currently 10% *ad valorem* but have been as high as 20% *ad valorem*.

24. The Fentanyl Tariffs on Canadian-origin goods are currently 35% *ad valorem*.

25. The Fentanyl Tariffs on Mexican-origin goods are currently 25% *ad valorem*.

26. On April 2, 2025, President Trump issued Executive Order 14257 imposing tariffs on nearly all imports of foreign-origin goods into the United States ("Reciprocal Tariffs"). Exec. Order No. 14257, 90 Fed. Reg. 15041 (Apr. 2, 2025).

27. The Reciprocal Tariffs were also imposed under IEEPA.

28. The Reciprocal Tariffs have ranged from 10% to 125% *ad valorem*, depending on the importer product's country of origin.

29. Although the President has since amended Executive Order 14257, the Reciprocal Tariffs remain in effect. *E.g.*, Exec. Order No. 14316, 90 Fed. Reg. 30823 (July 7, 2025); Exec. Order No. 14326, 90 Fed. Reg. 37963 (July 31, 2025).

30. Executive Orders 14193, 14194, 14195, and 14257 (as amended) ("Challenged Executive Orders") modified the Harmonized Tariff Schedule of the United States ("HTSUS") to implement the Fentanyl and Reciprocal Tariffs.

**CBP's Implementation of the Fentanyl and Reciprocal Tariffs**

31. CBP assesses and collects duties and tariffs based on the HTSUS.

32. CBP is responsible for confirming imported merchandise's HTSUS classification to properly assess duties and tariffs.

33. CBP has collected the Fentanyl and Reciprocal Tariffs since their effective date.

34. "Liquidation" is the final computation of duties and tariffs owed on an entry of imported merchandise.

35. By operation of law, liquidation typically occurs 314 days after the entry date.

36. CBP has the authority to extend liquidation.

37. But CBP has told importers that it will not extend liquidation solely because of the pending litigation in *Learning Resources, Inc. v. Trump*, No. 24-1287 (U.S. argued Nov. 5, 2025).

38. This Court has equitable authority to suspend liquidation in appropriate circumstances. *See* 19 U.S.C. § 1504(a); *In re Section 301 Cases*, 524 F. Supp. 3d 1355, 1371 (Ct. Int'l Trade 2021).

39. Alternatively, "the Government [can] opt[] to stipulate that it will refund the unlawfully collected duties for" a plaintiff's entries. *In re Section 301 Cases*, 524 F. Supp. 3d at 1371.

**Reliquidation and Refunds If the Tariffs Are Held to Be Unlawful**

40. The Defendants "have made very clear . . . that they will not object to the Court ordering reliquidation of plaintiffs' entries subject to the challenged IEEPA [tariffs] if such [tariffs] are found to be unlawful." Defs.' Opp'n to Mot. for Prelim. Inj. at 3, *AGS Co. Auto. Sols. v. U.S. Customs & Border Prot.*, No. 25-00255 (Ct. Int'l Trade Nov. 11, 2025).

41. In fact, the Defendants have assured this Court "that they will not oppose either request by plaintiffs for, or the Court's authority to issue, a final and unappealable order requiring CBP to liquidate or reliquidate plaintiffs' subject entries with refunds to plaintiffs of the challenged IEEPA [tariffs] if such [tariffs] are found unlawful." *Id.* at 4.

42. Because the Defendants have "convinced this [C]ourt to accept that importers who paid IEEPA tariffs will be able to receive refunds after reliquidation, and . . . benefited from the [C]ourt's subsequent conclusion that importers will not experience irreparable harm as a consequence of liquidation, the Government cannot later 'assume a contrary position' to argue that refunds are not available after liquidation." *AGS Co. Auto. Sols.*, slip op. at 5 (Ct. Int'l Trade Dec. 15, 2025) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)); *see Sumecht NA, Inc. v. United States*, 923 F.3d 1340, 1348 (Fed. Cir. 2019).

**Prior Litigation Challenging the Fentanyl and Reciprocal Tariffs**

43. This Court held that IEEPA does not authorize the imposition of the Fentanyl or Reciprocal Tariffs. *V.O.S. Selections*, 772 F. Supp. 3d at 1383.

44. Specifically, the Court concluded that "the words 'regulate . . . importation' [in IEEPA] cannot grant the President unlimited tariff authority." *Id.* at 1373.

45. And so, this Court held that the Fentanyl and Reciprocal Tariffs "exceed[] any tariff authority delegated to the President under IEEPA . . . [and] are thus *ultra vires* and contrary to law." *Id.* at 1376.

46. The Federal Circuit, sitting *en banc*, affirmed this Court's holding that the Fentanyl and Reciprocal Tariffs were unlawfully imposed. *V.O.S. Selections*, 149 F.4th at 1340.

47. The Federal Circuit concluded that "Congress, in enacting IEEPA, did not give the President wide-ranging authority to impose tariffs of the nature of the [Fentanyl] and Reciprocal Tariffs simply by the use of the term 'regulate . . . importation.'" *Id.* at 1337.

48. The Supreme Court granted certiorari and heard oral argument on November 5, 2025. *See Trump v. V.O.S. Selections, Inc.*, No. 25-250, 2025 U.S. LEXIS 2782 (Sept. 9, 2025); *Learning Res., Inc. v. Trump*, No. 24-1287 (U.S. argued Nov. 5, 2025).

49. The Supreme Court is expected to rule on the lawfulness of the Challenged Executive Orders in the near future.

**The Danfoss Importers' Injuries**

50. As of the date of this Complaint, the Danfoss Importers have paid—and continue to pay—the Fentanyl and Reciprocal Tariffs on their imports into the United States.

51. The entries on which the Danfoss Importers have paid the IEEPA tariffs imposed by the Challenged Executive Orders have liquidated and will continue to liquidate.

**COUNT I**
***Ultra Vires* Fentanyl and Reciprocal Tariff Executive Orders**

52. The Danfoss Importers reincorporates Paragraphs 1-51.

53. To "deal with any unusual and extraordinary threat" posed by a declared national emergency, 50 U.S.C. § 1702(a)(1)(B) authorizes the President to "investigate, block during the pendency of an investigation, regulate, direct and compel, nullify, void, prevent or prohibit[] any . . . importation . . . [of] any property in which any foreign country or a national thereof has any interest."

54. Section 1702(a)(1)(B) does not authorize the President to impose the Fentanyl or Reciprocal Tariffs. *V.O.S. Selections*, 149 F.4th at 1340.

55. In fact, "when drafting IEEPA, Congress did not use the term 'tariff' or any of its synonyms, like 'duty' or 'tax.'" *Id.* at 1330.

56. Moreover, the Federal Circuit concluded that "'[r]egulate' must be read in the context of [the] other verbs [used in § 1702(a)(1)(B)], none of which involve monetary actions or suggest the power to tax or impose tariffs." *Id.* at 1333-34.

57. And even if "regulate . . . importation" could be read to authorize the President to impose tariffs, that interpretation "runs afoul of the major questions doctrine," requiring "the

Government [to] 'point to clear congressional authorization' for its interpretation of IEEPA." *Id.* at 1335-36 (quoting *West Virginia v. Env't Prot. Agency*, 597 U.S. 697, 723 (2022)).

58. But no such clear congressional authorization exists. *Id.* at 1336.

59. Therefore, the Challenged Executive Orders; the HTSUS modifications predicated on those executive orders; and the collection of the Fentanyl and Reciprocal Tariffs were unlawful and should be set aside as *ultra vires*.

**COUNT II**
**Unconstitutional Delegation of Authority**
**(Alternative)**

60. The Danfoss Importers reincorporates Paragraphs 1-51.

61. If 50 U.S.C. § 1702(a)(1)(B) authorizes the President to impose the Fentanyl and Reciprocal Tariffs, then IEEPA is an unconstitutional delegation of congressional power to the executive branch.

62. The nondelegation doctrine requires Congress to "'lay down by legislative act an intelligible principle' . . . [that] 'meaningfully constrains' the President's authority." *V.O.S. Selections*, 772 F. Supp. 3d at 1371 (first quoting *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928); then quoting *Touby v. United States*, 500 U.S. 160, 166 (1991)).

63. Thus, "an unlimited delegation of tariff authority would constitute an improper abdication of legislative power to another branch of government." *Id.* at 1372.

64. If "IEEPA delegates unlimited tariff authority to the President, then IEEPA is unconstitutional. *See id.*

**COUNT III**
**Declaratory Relief under 28 U.S.C. § 2201.**

65. The Danfoss Importers reincorporates Paragraphs 1-64.

66. This Court has the power to "declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201.

67. The Danfoss Importers' claims present an actual controversy about the President's authority under IEEPA, the constitutionality of IEEPA, and CBP's authority to implement and collect the Fentanyl and Reciprocal Tariffs.

68. The Danfoss Importers are importers of record and have suffered injury by being required to deposit the Fentanyl and Reciprocal Tariffs on goods imported into the United States.

69. This Court can exercise its equitable power to enter a declaratory judgment that the Challenged Executive Orders are unlawful and that CBP lacks the authority to collect the Fentanyl and Reciprocal Tariffs from the Danfoss Importers.

**PRAYER FOR RELIEF**

The Danfoss Importers respectfully request that this Court:

(a) Declare that the President lacks the authority under IEEPA to impose the Fentanyl and Reciprocal Tariffs or, alternatively, that IEEPA is an unconstitutional delegation of authority from Congress to the executive branch;

(b) Declare that the Challenged Executive Orders are unlawful;

(c) Declare that CBP lacks the authority to collect the Fentanyl and Reciprocal Tariffs set out in the HTSUS from the Danfoss Importers;

(d) Order CBP to reliquidate any of the Danfoss Importers' entries where the Danfoss Importers have paid the Fentanyl or Reciprocal Tariffs;

(e) Permanently enjoin the Defendants from assessing the Fentanyl and Reciprocal Tariffs on the Danfoss Importers' future imports into the United States;

(f) Order the United States to refund to the Danfoss Importers the Fentanyl and Reciprocal Tariffs collected on the Danfoss Importers' entries of imported merchandise, with interest as provided by law;

(g) Award the Danfoss Importers reasonable costs incurred in bringing this action, including attorneys' fees; and

(h) Grant such further relief as the Court deems proper.

Dated: January 15, 2026

/s/ Michael J. Lowell

Michael J. Lowell
Justin Angotti
REED SMITH LLP
1301 K Street, NW
Suite 1000 – East Tower
Washington, DC 20005
(202) 414-9200
(202) 414-9299 (fax)
mlowell@reedsmith.com
jangotti@reedsmith.com

*Counsel for Plaintiffs*